424 P.2d 793

**William W. COUEY, Plaintiff-Appellee,**

**v.**

**NATIONAL BENEFIT LIFE INSURANCE COMPANY, a corporation, and Continental Casualty Company, a corporation, Defendants-Appellants.**

**No. 8131.**

Supreme Court of New Mexico.

March 6, 1967.

Adams & Pongetti, Albuquerque, for appellants.

Duran & Goodman, Albuquerque, for appellee.

## OPINION

MOISE, Justice.

Defendant insurance companies appeal from a judgment in favor of plaintiff assured. The parts of the policy material to the first issue raised in the briefs read:

"NATIONAL BENEFIT LIFE IN-
SURANCE COMPANY

A Legal Reserve Stock Company
Home Office
Chicago, Illinois

(Herein called the Company)

DOES HEREBY INSURE and agrees to pay WILLIAM W COUEY (hereinafter called the insured) in the event of hospital residence occurring solely as the consequence of direct bodily injury resulting from any accident and independently of all other causes while this policy is in force (hereinafter called such injury) subject to the provisions of this policy.

PART I

"HOSPITAL CONFINEMENT BEN-
EFIT FOR LIFE—$1,000 PER MONTH.

The company will pay at the rate of $1,000 per month for one day to a lifetime beginning with the first day when such injury shall continually confine the insured to a hospital (other than a sanitarium; rest home; or government hospital, unless a charge is made by such a hospital which the insured is legally required to pay)."

Whereas the policy was issued by defendant National Benefit Life Insurance Company, plaintiff alleged and defendants admitted that after the policy had been issued "defendant Continental Casualty Company absorbed the assets and liabilities of defendant National Benefit Life Insurance Company, or otherwise became responsible for the payment of its claims, * * *." Judgment was entered against both defendants, and both have appealed.

The several points raised by defendants require that we determine if all the hospitalization for which judgment was granted occurred "solely as a consequence of direct bodily injury resulting from any accident and independently of all other causes." The court concluded that it did. The defendants assert error because of a claim that the proof discloses the hospital-

ization to have been required, partially at least, by causes other than accident.

It appears that on July 8, 1963, while the policy was in force, plaintiff accidentally slipped and fell, injuring his lower back, wrist, shoulder and neck. He was treated at the plant where he worked, and then in the emergency room of the hospital, but was not actually hospitalized until more than a month later—on August 12, 1963. On this occasion he remained in the hospital until October 10, 1963. He was subsequently hospitalized from October 12, 1963 to November 5, 1963; from November 28, 1963 to March 24, 1964; from June 29, 1964 to September 15, 1964, and from September 18, 1964 to November 17, 1964, being a total of three hundred thirty seven days for what defendants describe as "what appears to be a relatively minor accident," but which the court found occurred solely as a consequence of direct bodily injury resulting from the accident, independent of all other causes.

It is defendants' position that notwithstanding the accidental fall and injury to plaintiff, the hospitalization did not result "solely as a consequence" thereof "independently of all other causes." Their claim is based on the fact plaintiff had a history of a neck sprain in 1932; a low back injury at the L4–5 level, with a laminectomy in 1958; a spinal fusion at the same level in 1961, and hospitalization for about a week in 1962 because of back trouble.

Also, plaintiff, while in the hospital after the July 8, 1963 accident, suffered a heart attack on September 4, 1963. He also developed an infection as a result of surgery performed on his back while in the hospital after August 12, 1963, and this infection caused him to have to return to the hospital on October 12, 1963, after being released on October 10, 1963. Taking into consideration plaintiff's history of back trouble and operations to improve it, as well as the fact of myocardial infarction and infection following surgery after entering hospital on August 12, 1963, is there substantial support in the evidence for the finding of the trial court that each period of hospitalization following the accident "occurred solely as a consequence of direct bodily injury resulting from the slip and fall on July 8, 1963 and independently of all other causes"? If the answer is in the affirmative, defendants must fail on this portion of their argument.

It is clear that, notwithstanding a history of back trouble suffered by plaintiff prior to the spinal fusion in 1961, after that date he was free of symptoms and back pain and except for the brief hospitalization in 1962 was able to work without discomfort until the accident of July 8, 1963. If we assume that the fall in 1963 re-damaged an old injury or condition and the surgery performed to repair it, can it be said that the July, 1963 fall was the sole cause of the hospitalization? Stated differently—does

liability arise if the proximate efficient cause of hospitalization is an accident which requires hospital residence, even though a pre-existing condition which may have been triggered or touched off thereby, or a latent, but theretofore unknown condition makes necessary a longer hospital stay than would normally result from the accident alone? We recognize the presence of cases which would support a negative answer. However, we think the better reasoning is found in those decisions which would answer in the affirmative. We do not propose to discuss the cases at any great length. Rather, we will limit ourselves to a relatively small number. The conclusions reached vary, according to the language of the particular policies being considered and the factual situations presented. Many of them are reviewed and discussed in the annotation at 84 A.L.R.2d 176.

Our problem is not as difficult as that presented in most of the cases, since the attending physician and surgeon here testified that in their opinions the accidental injury and the treatment necessarily given contributed to the infection and heart attack, and that the hospitalization did not result from any antecedent condition. In other words, there is direct evidence of a substantial character to support the court's findings and conclusion that the accident was the sole cause of the numerous hospitalizations, notwithstanding the prior history and intervening untoward occurrences. We do not overlook a concession by one doctor, in his testimony, that the previous condition of the back "was at least a contributing cause." In these circumstances, if the question is one of fact, we do not ordinarily disturb the finding made by the trial court. Board of County Com'rs of Dona Ana County v. Vargas, 76 N.M. 369, 415 P.2d 57 (1966); State ex rel. State Highway Commission v. Tanny, 68 N.M. 117, 359 P.2d 350 (1961).

In our view of the case, every injury or disease suffered by a person from his birth to the date of a particular injury contributes to some degree to the condition then present. Necessarily, by the words used in the policy it could not have been intended that payment would be due only when the accident was literally the sole cause of hospitalization. If a person had suffered a broken leg which had healed perfectly five years before, and a second accident wherein the leg had broken at the same place, could it be said that the condition resulting from the first break did not in any way contribute to the second break? We think the answer is obvious and, under defendants' theory, plaintiff would not be entitled to recover. In our view, this application of the language of the policy is entirely too restrictive and would be unreasonable. Other courts have agreed. See Freeman v. Mercantile Mut. Acc. Ins. Ass'n, 156 Mass. 351, 30 N.E. 1013 (1892);

Cramer v. John Hancock Mut. Life Ins. Co. of Boston, Mass., 18 N.J. Misc. 367, 13 A.2d 651, 657 (1940); Prudential Ins. Co. of America v. Carlson, 126 F.2d 607, 610 (10th Cir. 1942); 25 Mich.L.R. 467 (1927). We think the following oft-quoted language of Chief Justice Cardozo in Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914, 915, is pertinent:

" * * * In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. Eastern Dist. Piece Dye Works v. Travelers' Ins. Co., 234 N.Y. 441, 453, 138 N.E. 401, 26 A.L.R. 1505. 'Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract.' Bird v. St. Paul Fire & Marine Ins. Co., 224 N.Y. 47, 51, 120 N.E. 86, 87, 18 A.L.R. 875; Goldstein v. Standard Accident Ins. Co. 236 N.Y. 178, 183, 140 N.E. 235, 236; Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115. A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules.

"A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency. Leland v. Order of United Commercial Travelers of America, 233 Mass. 558, 564, 124 N.E. 517; Collins v. Casualty Co. of America, 224 Mass. 327, 112 N.E. 634, L.R.A. 1916E, 1203; Mutual Life Ins. Co. v. Dodge of New York (C.C.A.) 11 F.2d 486, 489, 59 A.L.R. 1240, certiorari denied, 271 U.S. 677, 46 S.Ct. 629, 70 L.Ed. 1147; Taylor v. New York Life Ins. Co., 176 Minn. 171, 174, 222 N.W. 912, 60 A.L.R. 959. * * *"

A few of the cases applying the principle under various types of policies are Fidelity Service Ins. Co. v. Jones, 280 Ala. 195, 191 So.2d 20 (1966); Finley v. Business Men's Assurance Co. of America, 236 Or. 328, 388 P.2d 459 (1964); Beams v. John Hancock Life Insurance Company, 325 F.2d 887 (8th Cir. 1963); Kansas City Life Ins. Co. v. Hayes, 184 F.2d 327 (10th Cir. 1950); Kilgore v. Reserve Life Insurance Company, 231 S.C. 111, 97 S.E.2d 392 (1957);

for additional cases see 84 A.L.R.2d 176, 192, 196.

Our responsibility is to consider the intent of the parties as expressed in the policy, and where questions arise because of ambiguities, a liberal construction in favor of the insured is to be adopted. Foundation Reserve Insurance Co. v. McCarthy, 77 N.M. 118, 419 P.2d 963 (1966); Erwin v. United Benefit Life Insurance Company, 70 N.M. 138, 371 P.2d 791 (1962). In construing the language, we must read terms and phrases in their usual and ordinary sense unless langauge of the policy requires something different. Fowler v. First National Life Insurance Company of America, 71 N.M. 364, 378 P.2d 605 (1963).

The question of whether the accident alone caused the hospitalization is a question of fact to be resolved by the fact finder. For cases supporting this rule and determining burden of proof, see 144 A.L.R. 1416 and 142 A.L.R. 742. See, also, 22 Appleman, Insurance Law and Practice, § 12853 (1947); Brown v. Metropolitan Life Insurance Company, 327 S.W.2d 252 (Mo.1959); Mutual Benefit Health & Accident Ass'n v. Francis, 148 F.2d 590 (8th Cir. 1945); Prudential Ins. Co. v. Carlson, supra; Kilgore v. Reserve Life Ins. Co., supra.

We are satisfied that in the instant case, under the authorities cited above, neither the fact that plaintiff had previously experienced back problems, nor that a heart attack and infection lengthened the hospital stay, can be considered, as a matter of law, to be independent causes, separate and apart from the bodily injury resulting from accident found by the court. The attack on the court's findings is held to be without merit.

An additional point argued by defendants must be considered. Material to this point is the following, which we quote from the policy of insurance:

"NOTICE OF CLAIM: Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by the policy; or as soon thereafter as is reasonably possible. Notice given by or on behalf of the insured or the beneficiary to the Company at Chicago, Illinois, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

"CLAIM FORMS: The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proof of loss. If such forms are not furnished within fifteen days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing of loss, written proof covering the occurrence, the character

and the extent of the loss for which claim is made.

" * * *

"PROOF OF LOSS: Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required."

It is defendants' position that the court erred in granting plaintiff judgment for the periods from June 29, 1964 to September 15, 1964, and from September 18, 1964 to November 17, 1964, for the reason that timely notice of claim for these two periods of hospitalization was not given, and timely proofs of loss as required by the policy were not furnished.

In this connection, the court found as follows:

"XX. That Plaintiff's policy requires only one proof of loss per accidental injury.

"XXI. That Defendants through their agents, contacted Dr. Coffey, Dr. Blackwood and Dr. Cramer pertaining to Plaintiff's medical status.

"XXII. That while Plaintiff was in the hospital, Defendants' adjustor contacted Plaintiff and, after discussing the claim with Plaintiff, denied Plaintiff's claim.

"XXIII. After Defendants' denial of Plaintiff's claim through their agent, Plaintiff employed an attorney to present his claim to the Defendants."
and concluded:

"III. That the Plaintiff satisfied all of the requirements of notice under the insurance contract between the Plaintiff and Defendants in order to receive benefits under said contract.

"IV. That if any requirements of notice under the insurance contract were not met then the Defendants waived such requirements."

Defendants argue that the provisions of the policy quoted above require a notice and proof of loss for each period of hospitalization giving rise to a claim for benefits, and assert that "it would seem absurd to say that after furnishing one proof of loss for the first period it was not necessary to furnish any further proof as to succeeding periods. Without having a proof of loss for each period, how could the Company know whether the succeeding periods for which no proofs are furnished are in any way connected with the accident?" Although, admittedly, notice and proof was

made of all but the last two periods of hospitalization, it is equally clear that no notice or proof of these two periods was ever given.

■ We find defendants' arguments unconvincing. Notice and proof of loss following the accident having been given, and plaintiff having talked to defendants' representative some time between October 12 and November 15, 1963, and having been given authority to examine the hospital records, following which liability was denied, we see no further duty or obligation resting on defendant to give additional notice, assuming, for the sake of argument, that the policy provided for a notice for each hospitalization resulting from a single accident.

■ In Gillum v. Southland Life Insurance Company, 70 N.M. 293, 297, 373 P.2d 536, 539 (1962), we recognized that a policy requirement of proof of loss could and would be waived if liability under the policy was denied for a different reason. We there said:

"* * * We are in full accord with the general rule that denial of liability by an insurer, made to the insured during the period prescribed by the policy for presentation of proofs of loss on other grounds rather than failure to furnish proofs, will ordinarily be considered as a waiver of the provisions of the policy requiring the filing of proofs of loss. * * *"

In 49 A.L.R.2d 161, 163, the rule is stated thus:

"It seems to be universally agreed that a denial of liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, and on grounds not relating to the proofs, constitutes a waiver of the provisions of the policy requiring proofs to be presented, the principal reason for the rule being that since the insurer has indicated its rejection of the claim, the presentation of proofs of loss would be a useless gesture."

Numerous cases supporting the rule are cited at pages 175–180.

Following the language quoted above is the following, with supporting cases found on page 185:

"By the same token, proofs of loss are waived by a denial of liability, or, more accurately, a statement that in the event of a loss liability will be denied, made prior to the occurrence of the loss."

To our minds, this disposes of any possible argument that the denial of liability voiced some time between October 12 and November 5, 1963, could not be assumed to include later accruing claims. Inasmuch as all claims of rights to benefits under the policy are predicated on the single accident of July 8, we would find it difficult to imagine that liability for later periods of hospitalization would be conceded when the

earlier ones were denied. No possible useful purpose would have been served by additional notices and proofs after plaintiff had been unequivocally advised that defendant denied liability. See 4 Couch on Insurance 2d, § 26:305 (1960); 16 Appleman, Insurance Law and Practice, § 9260 (1944).

Having considered all arguments made in support of claimed errors and having found them to be without merit, the judgment appealed from is affirmed.

It is so ordered.

CARMODY, J., and OMAN, J., Court of Appeals, concur.