441 P.2d 50

Vangie VARGAS, Plaintiff-Appellant,

v.

PACIFIC NATIONAL LIFE ASSURANCE COMPANY and E. Jaramillo, Defendants-Appellees.

No. 8487.

Supreme Court of New Mexico.

May 20, 1968.

Dolan & Clear and Robert H. McBride, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb and John P. Eastham, Albuquerque, for appellees.

## OPINION

MOISE, Justice.

We are here called upon to determine the legal effect of a "conditional premium receipt" issued to an applicant for life insurance which provides that under certain conditions the insurance shall be in effect from the date of application. The problem is one which has been many times before the courts of this country, see Annot., 2 A.L.R.2d 943 (1948), but we have never been called upon to consider it.

The facts in the instant case are not in dispute. They disclose that on October 18, 1965, E. Jaramillo (a defendant-appellee, hereinafter referred to as "agent"), an agent of defendant-appellee insurance company (hereinafter referred to as the "company"), visited Agapito E. Vargas, the applicant, and his wife, the plaintiff-appellant, in their home soliciting the sale of a mortgage life insurance policy offered by appellee company. At that time the applicant made application for such a policy by signing an application form duly filled out, and paying to the agent $20.85 for which a "conditional premium receipt" was made out and read by the agent to the applicant with the explanation that no medical examination was required and that if the application was approved and the applicant found to be acceptable under the company's rules and regulations the insurance would be in effect and provide coverage from and after October 18, 1965.

The application contained the following language:

"(1) Except as provided in the Conditional Premium Receipt, the Company shall incur no liability under this application until it has been received and approved, a policy issued and delivered, and the full initial premium has been paid to and accepted by the Company while the health and occupation of the Proposed Insured and any person proposed for coverage remains as described in the application."

The conditional receipt read as follows on the front:

**CONDITIONAL PREMIUM RECEIPT**

**Nº 535407**

THIS RECEIPT IS TO BE ISSUED ONLY IF FULL INITIAL PREMIUM IS TENDERED OR ALLOTMENT IS VERIFIED ACCORDING TO THE METHOD OF PAYMENT SELECTED IN THE APPLICATION; OTHERWISE IT MUST NOT BE DETACHED.

Received from _Agapito E. Vargas_ _Oct 18, 19 65_ a payment to

Pacific National Life Assurance Company of $_20.85_ ☒Cash ☐Allotment Verification in connection with an application bearing the same number as this receipt for a policy on the life of _Agapita E. Vargas_

THIS PAYMENT IS ACCEPTED AND, PROVIDED THE CONDITIONS ON THE OTHER SIDE OF THIS RECEIPT ARE MET, THE INSURANCE APPLIED FOR SHALL BECOME EFFECTIVE ON THE DATE INDICATED IN CONDITION (A). If this payment is made by check or draft which is not honored when first presented for payment, this receipt is void.

_____, Agent

If you do not hear from the Company regarding the proposed insurance within 30 days, notify the Company at its Home Office in San Francisco, giving the name of the agent, date and amount paid, and the number of this receipt. Neither the agent nor the medical examiner is authorized to accept risks or pass upon insurability, to make or modify contracts, or to waive the Company's rights or requirements.

**and as follows on the back:**

**CONDITIONS**

(A) If, after receiving at its Home Office all medical examinations and other underwriting information, the Company is satisfied that, at the time of completing the application, the Proposed Insured or any person proposed for insurance coverage was acceptable under the Company's rules for a policy exactly as applied for in the application; then the insurance will be effective from the date of the application or, if required, the date of medical examination, whichever is later, provided that:

(1) Total life insurance in force with the Company on the Proposed Insured or any person proposed for insurance coverage, including the amount requested in this application, shall not exceed $100,000.

(2) Full initial premium is tendered or allotment verified according to the method of payment selected in the application. Coverage shall terminate if any allotment is not received within 90 days from the date of the application or upon discontinuance of the allotment.

(3) No insurance shall take effect on any child, who at the date of the application is under the age of 15 days, until the application has been approved by the Company and the policy issued and delivered while the child is in good health and has attained the age of 15 days.

(B) If, after receiving at its Home Office all medical examinations and other underwriting information, the Company determines that at the time of completing the application the Proposed Insured or any person proposed for insurance coverage was not acceptable under the Company's rules for a policy exactly as applied for in the application; then the insurance protection applied for shall not become effective, and the amount tendered hereunder shall be returned to the applicant. Any delay in the return of the amount tendered shall not be construed as approval of the application.

The court found, and, although challenged, there is no proof to the contrary, that no misrepresentations of any kind were made by the agent.

On October 21, 1965, the company requested certain information concerning the applicant from the Retail Credit Company. On October 23, 1965, the applicant died, apparently of carbon monoxide poisoning, and the company was advised of this fact on October 29, 1965. On November 2, 1965, the company ordered a death claim report from Retail Credit Company, and sent death claim forms to their general agent. The company caused Retail Credit Company to complete its investigation concerning underwriting information sought in connection with the application. This information was completed on December 13, 1965, whereupon the underwriting department determined that because of applicant's drinking habits as disclosed by the report, he was not acceptable under the company's rules and regulations for the policy applied for. The court found this determination was made in good faith in accordance with appellee's rules and regulations, and was not influenced by the fact the applicant had died. On December 14, 1965, appellant was notified of the company's decision and the $20.85 payment was returned to her.

The court concluded that there had been no misrepresentation of fact by the agent; that the receipt was not ambiguous; and that no insurance was in force, from which it followed that plaintiff was not entitled to any recovery. This appeal is from the judgment entered pursuant to these determinations.

The only question which we are called upon to answer concerns the legal effect of the receipt copied above. Our attention has been directed to the various arguments that have been advanced in numerous cases, both in support of the binding effect of conditional or "binding receipts," and in derogation of the same. As has been explained by many courts, the decisions cannot be reconciled, and in our view many of them cannot be supported by reason. It would seem that differing results have been reached according to the variation in the receipts used, and that a variety of reasoning has been adopted by courts to support their conclusions. The net result is that any particular case is valuable as authority to support a conclusion in a later case only on a comparative or theoretical basis. We have already noted the differences to be found in the result reached in the cases. The varying reasoning has been the subject of many articles by legal writers over the years. See Fortunato, Conditional Receipts: Should the Uninsurable have Insurance, Vol. 1, No. 3, The Forum of the A.B.A. Section of Insurance, Negligence and Compensation Law (April, 1966); Crowe, Conditional Receipts—Life, Accident and Health Insurance, 1965 Proceedings of A.B.A. Section of Insurance, Negligence and Compensation Law, at 52; comment, 7 Stanford L.Rev. 292 (1955); comment, 63 Yale L.J. 523 (1954); 15 U. of Chicago L.Rev. 379 (1948); 60 Harvard L.Rev. 1164 (1947); comment, Life Insurance Binding Receipts, 33 Ill.L.Rev. 180 (1938); comment, 44 Yale L.J. 1223 (1935).

We approach our problem with full recognition of the fact that the law of contracts is applicable, and that the measure of the rights and duties of the parties is to be found in their intention as expressed by them in the contract. Mofrad v. New York Life Ins. Co., 206 F.2d 491 (10th Cir. 1953). To this we would add that if uncertainties or ambiguities are present, a liberal construction favorable to insured is to be adopted. Couey v. National Benefit Life Insurance Company, 77 N.M. 512, 424 P.2d 793 (1967); Fowler v. First National Life Insurance Co. of America, 71 N.M. 364, 378 P.2d 605 (1963); Erwin v. United Benefit Life Insurance Company, 70 N.M. 138, 371 P.2d 791 (1962).

The trial court determined that the receipt in issue was not ambiguous. Although included in the findings of fact, this is a legal determination. Jones v. International Union of Operating Engineers, 72 N.M. 322, 383 P.2d 571 (1963). Likewise, if unambiguous, the interpretation of the contract was one of law to be made

by the court. Southwest Motel Brokers, Inc. v. Alamo Hotels, Inc., 72 N.M. 227, 382 P.2d 707 (1963). Appellant asserts that the contract is ambiguous. However, as we read it, there can be little question that it clearly states the circumstances under which it was to be effective as of October 18, 1965, the date of the application. Where no medical examination is required, the effective date is stated to be after the company receives all underwriting information and is satisfied that the applicant is acceptable under its rules for the policy applied for. Of course, the company rules are not set forth, but that immediate insurance will not result until after acceptability is determined would seem to be clear. Under the circumstances, we cannot hold that the applicant could have been misled, or could have misunderstood that the coverage applied for would not attach immediately. We agree that there was no ambiguity as to when the insurance would be effective.

Can it be said that an ambiguity resulted because of the reference to the company's rules and regulations? The receipt clearly states one of the conditions upon which insurance may become effective on the date of the receipt is that the applicant be "acceptable under the Company's rules" for the policy applied for. Although the word "insurability" is not used, appellee argues, and the proof supports a finding that the agent explained to the applicant that the insurance was not in effect immediately, and was dependent upon the applicant's being determined to be an acceptable risk. "Acceptability" for insurance when governed by fixed rules is no different than "insurability," which includes more than considerations of good health as that term is used in certain receipts. See New England Mutual Life Ins. Co. of Boston v. Hinkle, 248 F.2d 879 (8th Cir. 1957). Under the facts of this case we see no reason to rewrite the contract of the parties so as to make the receipt mean something which it does not say and which the parties did not understand or intend. See Anaya v. Foundation Reserve Insurance Company, 76 N.M. 334, 414 P.2d 848 (1966); Gray v. International Service Insurance Company, 73 N.M. 158, 386 P.2d 249 (1963).

Appellant asserts that the majority of courts, and most decisions reached since 1940, hold the insurance company liable in cases where conditional receipts have been issued. While not prepared to say that a majority either before or since 1940 hold to this effect, we are well aware that a respectable number so hold but on differing fact situations. Two of the latest are Allen v. Metropolitan Life Insurance Company, 44 N.J. 294, 208 A.2d 638 (1965), and Ransom v. The Penn Mutual Life Insurance Company, 43 Cal.2d 420, 274 P.2d 633 (1954). Also, see Prudential Insurance Company of America v. Lamme, 425 P.2d 346 (Nev.1967).

We have already noted that differing language utilized by the insurance companies in receipts tends to reduce the value of any particular case as authority. However, since 1940 numerous cases have held conditional receipts create interim insurance only when the conditions recited in the receipt have been met. A few of these are Cliborn v. Lincoln National Life Insurance Co., 332 F.2d 645 (10th Cir. 1964); Killpack v. National Old Line Insurance Company, 229 F.2d 851 (10th Cir. 1956); Adolf v. Union National Life Insurance Company, 170 Neb. 38, 101 N.W.2d 504 (1960); Morgan v. State Farm Life Insurance Company, 240 Or. 113, 400 P.2d 223 (1965); Debenport v. Great Commonwealth Life Insurance Company, 324 S.W.2d 566 (Tex.Civ.App.1959); Southwestern Life Insurance Company v. Evans, 262 S.W.2d 512 (Tex.Civ.App.1953). See also, Annot., 2 A.L.R.2d 943, 998, § 25 (1948). We would take special note of the recent case of Taylor v. New York Life Insurance Company, 324 F.2d 768 (10th Cir. 1963), where the conditional receipt was substantially the same as the one here being considered. We quote from the court's opinion the following which we consider applicable here:

"* * * We find no ambiguity or uncertainty in the provisions of the ap-

plication. A reading of the contract here by one trained in the insurance business or by one unacquainted with the niceties of life insurance agreements, would readily ascertain that if an applicant pays the first premium when the application is completed, he will be insured from the date of such completion only 'if the company is satisfied from evidence received by it that, at the time of the application, the proposed insured * * * was acceptable under the company's rules for the policy applied for. * * *' The company's evidence was that from the information furnished by the applicant, he was not acceptable under company rules. This was the question submitted to the jury which found for the defendant, and we find no error."

For the reasons stated the trial court's judgment will be affirmed. It is so ordered.

NOBLE and COMPTON, JJ., concur.